IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| WILLIAM PRESTON HOPPER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-165-O |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, William Preston Hopper, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## I. BACKGROUND

Petitioner was indicted in Hood County, Texas, Case No. CR12877, for continuous family violence with a deadly weapon, his hands. Clerk's R. 7, ECF No. 13-12. On October 28, 2014, a jury found Petitioner guilty of the offense and answered affirmatively to the "special issue" on a deadly weapon. *Id.* at 16-17, 20. Subsequently, Petitioner pleaded true to the enhancement and habitual-offender allegations in the indictment, and the trial court assessed his punishment at life imprisonment. *Id.* at 30. Petitioner's conviction was affirmed on appeal, as modified to reflect that the trial court assessed Petitioner's punishment, and the Texas Court of Criminal Appeals refused his petition for discretionary review. Docket Sheet 1-2, ECF No. 13-2. Petitioner also challenged his

conviction in a postconviction state habeas-corpus application, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court.[1] SHR-01 Action Taken, ECF No. 13-19.

The state appellate court set forth the facts of the case as follows:

> [Petitioner] was indicted with continuous violence against the family from October 1, 2013 to February 1, 2014, specifically against two of his girlfriends during this period: Sandra VanZant and Starla Green. The State alleged that [Petitioner] committed assault—intentionally, knowingly, or recklessly caused bodily injury to VanZant and Green—by hitting them in the head with his hands and by impeding their breathing with his hands. Based on these allegations, the State sought a finding that [Petitioner] "did use or exhibit a deadly weapon during the commission of the offense, to wit: said defendant's hands, that in the manner of its use or intended use was capable of causing death or serious bodily injury."
>
> Both Green and VanZant testified at trial. Green dated Hopper and experienced his violent nature. During arguments, [Petitioner] hit Green with his hands "on the side of the face or on the arm." During one argument, [Petitioner] sat on top of Green and "put his hand over [her] mouth . . . and nose." Green could not breathe and was afraid that she "wasn't going to live." The struggle continued for approximately ninety seconds, and Green testified that she was in danger of losing consciousness. During a later argument, [Petitioner] dragged Green by her neck out of his truck where she fell to the ground. [Petitioner] picked her up by the neck again and took her into the house. This caused Green to have a "linear bruise" across her neck, which was consistent with [Petitioner]'s arm being around her neck. [Petitioner] also tried to "take [her] jaw off, rip it off" by pulling it down with his hands. Green had to use makeup to cover the bruises and cut lip that she received during this incident. This assault convinced Green she needed to leave [Petitioner] and to report him to the police. All of [Petitioner]'s assaults on Green occurred during a two- to three-week period between the dates alleged in the indictment.
>
> VanZant began dating [Petitioner] after his relationship with Green ended. VanZant testified that [Petitioner] grabbed her around her neck twice between the dates alleged in the indictment. The first assault occurred while she and [Petitioner] were having an argument on the couch. [Petitioner] hit her on the side of her head with his fist. [Petitioner] continued hitting her and then sat on top of her, "grabbed" her by the throat, pinned her to the couch, and began "choking" her by putting both his hands around her throat with his thumbs to the front. He put "pressure" on her

---

[1]"SHR-01" refers to the record of Petitioner's state habeas proceeding in WR-87,436-01.

throat, and VanZant could not breathe for "a few seconds." She believed she was going to die. While [Petitioner] was choking VanZant, his face was "wild" and "mad," and he called her a "stupid bitch." After [Petitioner] released VanZant, he told her to "clean [herself] up." VanZant saw that her mouth was bleeding and that her face was bruised and swollen.

The second assault happened on January 23, 2014, during a different argument at [Petitioner]'s house, which arose after [Petitioner] suspected VanZant had talked to the police after the first assault. [Petitioner] again hit VanZant in the head with his fist "a bunch" of times and then convinced VanZant to "go somewhere" in his truck. [Petitioner] was "very upset" and began to tell VanZant that he would do to her "what they did to people that were snitches." When VanZant tried to roll down the window and call for help from passing motorists, [Petitioner] hit her again. [Petitioner] finally stopped the truck, removed VanZant from the truck, and began "punching" her. When VanZant could no longer stand, [Petitioner] pulled her back to the truck by her hair and "shoved" her into his truck in the floorboard. [Petitioner] sat on top of VanZant and began "choking" her by "squeezing [her] neck." VanZant's arms went numb, her peripheral vision failed, and she began to black out. VanZant believed she was going to die. She finally was able to press her thumb into [Petitioner]'s eye until he released her. VanZant experienced nausea, vomiting, and shortness of breath after the attack and also had bruising on her neck and hemorrhages in her eyes.

A forensic nurse examiner, Tiffanie Dusang, testified as an expert on strangulation. She reviewed VanZant's medical records and pictures of her injuries after the January 23, 2014 assault and concluded that they were consistent with VanZant being strangled. Similarly, Green's injuries—bruising on her neck and jaw—were consistent with [Petitioner] using his hands on her neck and jaw as Green had testified. Dusang opined that a victim's estimates of how long such an episode occurred would not be reliable because it would be a "traumatic situation." Dusang testified that a person could use his hands in a manner that is capable of causing death or serious bodily injury. Based on Green's and VanZant's testimonies, which Dusang heard, she concluded that [Petitioner] had used his hands as a deadly weapon during some of the assaults. The jury concluded that the manner in which Hopper had used or intended to use his hands was capable of causing death or serious bodily injury.

Mem. Op. 3-6, ECF No. 13-3 (citations omitted).

## II. ISSUES

In four grounds for relief, Petitioner raises the following claims:

3

(1) he was denied effective assistance of trial counsel due to counsel's failure to—

    (a) obtain funds from the court prior to trial in order to hire a qualified forensic expert in the field of manual asphyxiation and strangulation to act as a rebuttal witness to controvert the testimony of the state's expert;

    (b) interview all potential witnesses for both phases of trial based on the list provided by Petitioner;

    (c) object and/or request a curative instruction and move for a mistrial to the state's improper argument on Petitioner's failure to testify;

    (d) interview or call Petitioner's parents to testify on his behalf during the punishment phase; and

    (e) object to the state's improper argument on matters outside the record;

(2) he was denied effective assistance of appellate counsel because counsel presented issues that were not properly preserved for appellate review;

(3) the trial court erred and abused its discretion by—

    (a) qualifying and finding that the state's "forensic expert" on choking and strangulation was, in fact, qualified to testify as an expert in the field; and

    (b) entering a deadly weapon finding; and

(4) the prosecutor engaged in misconduct during closing argument in the guilt/innocence phase of trial by—

    (a) twice improperly commenting on Petitioner's failure to testify; and

    (b) improperly commenting on matters outside the record.

Pet.6-7B1, ECF No. 1.

### III. RULE 5 STATEMENT

Respondent does not believe that the petition is successive or time-barred, however she does believe that Petitioner's claims (1)(e) and (4)(a) are unexhausted and/or procedurally barred from federal habeas review. Resp't's Answer 6-12, ECF No. 11.

**IV. EXHAUSTION AND PROCEDURAL DEFAULT**

Petitioners seeking habeas-corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1)(A); *Fisher v. Texas,* 169 F.3d 295, 302 (5th Cir. 1999). In order for a claim to be exhausted, the state's highest court must have been presented with the same facts and legal theory upon which the petitioner bases his current assertions. *See Ruiz v. Quarterman,* 460 F.3d 638, 643 (5th Cir. 2006). In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals. *Richardson v. Procunier,* 762 F.2d 429, 431-32 (5th Cir. 1985). Therefore, a Texas prisoner may satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a petition for discretionary review or a state habeas-corpus proceeding pursuant to article 11.07 of the Texas Code of Criminal Procedure in a procedurally proper manner. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West 2015); *Depuy v. Butler,* 837 F.2d 699, 702 (5th Cir. 1988).

Respondent asserts that Petitioner's claim (1)(e) concerning counsel's failure to object to jury argument outside the record is unexhausted and procedurally barred from the Court's review because Petitioner never presented the claim in state court. Resp't's Answer 6-9, ECF No. 11. A review of the state court records reveals that Respondent is correct. Thus, the claim raised for the first time in this federal petition is unexhausted. Under the Texas abuse-of-the-writ doctrine, however, Petitioner cannot now return to state court for purposes of exhausting the claim. TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a)-(c). The abuse-of-the-writ doctrine represents an independent and adequate state procedural bar to federal habeas review. *See Smith v. Johnson,* 261 F.3d 521, 523-24 (5th Cir. 2000); *Nobles v. Johnson,* 127 F.3d 409, 423 (5th Cir. 1997).

Respondent also asserts that Petitioner's claim (4)(a) concerning the prosecution's improper

comments on his failure to testify is procedurally barred from federal habeas review because the state appellate court, in the last reasoned opinion on the issue, expressly and unambiguously rejected the claim based on Petitioner's failure to lodge a contemporaneous objection at trial. Resp't's Answer 9-12, ECF No. 11. Under the procedural-default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last reasoned state court opinion expressly and unambiguously rejects a claim based on an independent and adequate state procedural default. *See Ylst v. Nunnemaker,* 501 U.S. 797, 802-04 (1991); *Coleman,* 501 U.S. at 729; *Fisher,* 169 F.3d at 300. "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain,* 128 F.3d 900, 902 (5th Cir. 1997). The state's contemporaneous-objection rule is an independent and adequate state procedural bar to federal habeas review. *See Scheanette v. Quarterman,* 482 F.3d 815, 823 (5th Cir. 2007).

A state prisoner may overcome unexhausted/procedurally-barred claims by demonstrating either cause for the procedural default and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice—*i.e.,* that he is actually innocent of the offense for which he was convicted. *McQuiggin v. Perkins,* 569 U.S. 383, 386 (2013); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). To establish actual innocence, a petitioner must provide the court with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (1995).

Petitioner does not assert, much less demonstrate, that he is actually innocent of the offense for which he was convicted. Instead, Petitioner contends that the default of claim (1)(e) in state court was the result of trial counsel's failure to object to the argument at trial and appellate counsel's

6

failure to raise the issue on appeal. Pet'r's Traverse 2, ECF No. 15. A petitioner can overcome the procedural default of an ineffective-assistance-of-trial-counsel claim where there is no state habeas counsel in the initial state habeas proceeding or counsel in that proceeding was ineffective and he can show that his claim is substantial—*i.e.,* that the claim has "some merit" under the *Strickland v. Washington,* 466 U.S. 668 (1984), attorney-performance standard, *see infra*. *Martinez v. Ryan,* 566 U.S. 1, 14 (2012). *Martinez* does not apply to claims of ineffective assistance of appellate counsel; thus, the Court considers only whether trial counsel was ineffective by failing to object to the prosecution's argument.

Petitioner complains of the following argument:

And I want to bring up, I guess, a couple more things. One, you noticed in the -- my direct examination of Sandra Vanzant, I didn't mention anything about the drugs, because that's not admissible. I mean I can't come in here and say the defendant is a drug dealer in an assault case. You know, that -- that's not right. We talked about it on voir dire. And yet the defense brings it up. Why? Why do they bring up the fact that she is involved in meth, why does he bring up the fact that she's had sex with him after all this has happened? And as he said in his argument, she just brings it on, more and more and more, she's having sex with him. And I guess the only thing that makes sense is this idea that if the defense can convince you that these women are sluts, that they're drug users, that maybe you won't care if this defendant beats them up and strangles them. You know, that's what he's talking about, "These people, loose people, people who use drugs, we don't care about them." *But these people are important. And I ask you to follow the law. The one thing that these two women have in common is that -- is this defendant. I mean he's the common denominator.*

*These officers have investigated the case, these witnesses, you know, they've borne this, these victims, and Ms. Green didn't even want to come in here and testify, but she's done it. And for what? For you to protect your community and protect these victims, and, you know, there's a string of them.*

*This is your community. When you hear about these cases, you hear about them on the news all the time, people being stalked, held in a house for days, and -- and if you -- you hear about what the society does and what the response is to the -- to the system, and if you think that our system hasn't worked in cases like this, if you*

7

> *-- if you've said, "Our system's broken," ladies and gentlemen, when you became the jurors in this case, you forfeited your ability or your right to complain about the system in exactly the same way, because when you took the oath, you became the system. And if justice is going to be done here, it's going to be because you do it. It's not going to be these officers, it's not going to be me, it's not going to be the judge, it's going to be you.*

Reporter's R., vol. 4, 234-35, ECF No. 13-9 (emphasis added); Pet. 6A4, ECF No. 1.

The four areas of proper jury argument under state law are summation of the evidence; reasonable inference from the evidence; answer to opposing counsel's argument; and pleas for law enforcement. *See Buxton v. Collins,* 925 F.2d 816, 825 (5th Cir. 1991). The complained-of argument falls within the third and fourth categories. Counsel is not required to make futile motions or objections. *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990). Because Petitioner fails to allege adequate cause to excuse the default, the claim is procedurally barred from this Court's review.

Similarly, as to claim (4)(a), Petitioner contends that the default of the claim in state court was the result of trial counsel's failure to preserve the issue for appellate review. Pet'r's Traverse 4, ECF No. 15. In an affidavit filed in the state habeas proceeding, counsel responded to the claim as follows:

> I was [Petitioner]'s trial attorney. During the closing arguments I believe the State improperly referred to [Petitioner]'s failure to testify, I objected to that reference and that objection was sustained. I did fail to ask the Court to instruct the jury to disregard. I never intended to ask the Court for a mistrial at that stage of the trial. If granted, I felt [Petitioner]'s chances at a second trial, after revealing our trial strategy, would have been detrimental to his case. I felt like the instructions in the charge about not considering the defendant's failure to testify were adequate to protect [Petitioner] considering where we were in the trial and what the testimony had been. If a mistrial had been asked for and granted, I was concerned that [Petitioner] would also have to face additional charges and that any sentence handed down would potentially be run consecutively.
>
> In fact, after the trial, the threat of there being error found a[t] the trial level, allowed me to negotiate a plea deal on one of [Petitioner]'s other charges to be run

concurrent.

Supp. SHR-01 10, ECF No. 13-21.

Clearly, counsel's decision was strategic. Under *Strickland,* such decisions after a "thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690-01. Furthermore, given the considerable evidence of Petitioner's guilt, there is no reasonable probability that, absent the remarks, the result would have been different. Because Petitioner fails to allege adequate cause or prejudice to excuse the default, the claim is procedurally barred from this Court's review.

**V. DISCUSSION**

**A. Standard of Review**

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke,*

9

356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). Absent express findings, a federal court may imply fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002). It is the petitioner's burden to rebut the presumption of correctness.

Furthermore, when the most recent state court to consider a constitutional issue provides a "reasoned opinion," a federal habeas corpus court must "review[ ] the specific reasons given by the state court and defer[ ] to those reasons if they are reasonable." *Wilson v. Sellers,* — U.S. —, 138 S. Ct. 1188, 1191-92 (2018). If the opinion was made without a written explanation, a federal court should "'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Id.* In other words, federal habeas-corpus courts confronted with an unexplained state court decision "are to 'look through' the decision to an earlier state court opinion and presume that the earlier one provides the relevant rationale." *Thomas v. Vannoy,* 898 F.3d 561, 568 (5th Cir. 2018) (citing *Wilson,* 138 S. Ct. at 1192).

**B. Grounds One and Two**

Under grounds one and two, Petitioner claims that he received ineffective assistance of counsel at trial and on appeal. Pet. 6-6B1, ECF No. 1. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland*, 466 U.S. at 688; *Anders v. California*, 386 U.S. 738, 744 (1967). *See also Styron v. Johnson,* 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective-assistance claims against appellate counsel). An ineffective-

assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial or appellate strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance-of-counsel claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams,* 529 U.S. at 410)); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Petitioner claims that his trial counsel was ineffective by failing to (a) obtain funds from the court prior to trial in order to hire a qualified forensic expert in the field of manual asphyxiation and strangulation to act as a rebuttal witness to controvert the testimony of the state's expert witness Tiffanie Dusang; (b) interview all potential witnesses for both phases of trial based on the list provided by Petitioner; (c) object and/or request a curative instruction and move for a mistrial to the

state's improper comments on his failure to testify; and (d) interview or call Petitioner's parents to testify on his behalf during the punishment phase. Pet. 6-6A4, ECF No. 1. He requests that the Court sustain his grounds singularly, as well as cumulatively. Pet'r's Pet. 6A4, ECF No. 1.

Petitioner raised these ineffective-assistance claims in his state habeas application and the state habeas court, in recommending that relief be denied, found that there were "no controverted, previously unresolved issues of fact material to the legality of the Petitioner's conviction." SHR-01 24, ECF No. 13-22. The Texas Court of Criminal Appeals remanded the case and ordered the trial court to enter particularized findings of fact and legal conclusions concerning claims (c) and (d) and found Petitioner's remaining claims to be without merit. *Id.* 1 n.1, ECF No. 13-23. The state habeas judge, who also presided at trial, conducted a hearing by affidavit on those two areas of concern. Counsel's response to claim (c) is set out above under section IV of this opinion. In a supplemental affidavit, counsel responded to claim (d) as follows:

> [Petitioner] never provided me any names of any potential witnesses other than his parents. I met with, and interviewed his mother and father, on several occasions. I considered calling them both as witnesses many times. Ultimately, [Petitioner] and I decided that we would not call either of them as a witness in his case, for various reasons.

*Id.* at 12.

Based on counsel's affidavit, the documentary record, and his own recollection of counsel's performance at trial, the state habeas court found that counsel's decision not to object and/or request a curative instruction and move for a mistrial to the state's improper comments on his failure to testify was "legitimate trial strategy"; that Petitioner only provided the names of his parents as potential witnesses; and that Petitioner's claims lacked any "corroborating proof." *Id.* at 6-7. Based on its findings, and applying the *Strickland* standard, the state court concluded that Petitioner failed

to overcome the presumption that counsel's action or inaction might be considered sound trial strategy; that Petitioner failed to prove counsel provided ineffective assistance; and that, assuming *arguendo* that counsel did render ineffective assistance, the evidence of Petitioner's guilt was overwhelming and, thus, any such error did not contribute to his conviction or punishment. *Id.* at 7-8.

To the extent particularized findings and legal conclusions were not made in state court as to Petitioner's claims (a) and (b), this Court may imply factual findings consistent with the state courts' disposition and, absent any evidence that incorrect standards were applied, assume that the state courts applied the *Strickland* standard when considering the claims. Relying on the presumptive correctness of the state courts' express and implied factual findings, and having independently reviewed Petitioner's ineffective-assistance-of-trial-counsel claims in conjunction with the state court records, the state courts' application of *Strickland* is not objectively unreasonable under the doubly-deferential standard applied to such claims. Petitioner's claims are conclusory, with no legal and/or evidentiary basis, or involve strategic and tactical decisions made by counsel, both of which generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (providing strategic decisions by counsel are "virtually unchallengeable" and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir. 2002) (providing petitioner must "bring forth" evidence, such as affidavits, from uncalled witnesses, including expert witnesses, in support of an ineffective-assistance claim); *Green v. Johnson,* 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue"); *Murray v. Maggio,* 736 F.2d 279, 282-83 (5th Cir. 1984) (providing complaints of uncalled witnesses are not favored in federal habeas review and a petitioner must

overcome a strong presumption that counsel's decision whether or not to call a particular witness was a strategic one). Further, because Petitioner fails to establish separate acts of deficient performance, it necessarily follows that relief is not warranted under a cumulative *Strickland* analysis. Pet. 6A4, ECF No. 1.

Similarly, Petitioner failed to demonstrate deficient performance by counsel and prejudice on appeal. Under his second ground, Petitioner claims that his appellate counsel was ineffective by raising issues on appeal that were not preserved for appellate review and/or not supported with legal authority and "cogent argument"—specifically, his claim under point one of appellant's brief concerning the prosecutor's improper comments on his failure to testify and his alternative argument under point two that the deadly-weapon statute under former article 42.12, § 3g(a)(2) of the Texas Code of Criminal Procedure "is unconstitutional in that the words 'or exhibited' in relation to a defendant's hands violate[] the equal protection and due process clauses of the Constitution" by disqualifying Petitioner from the benefit of good-conduct time to reduce his sentence. Pet. 6, 6B1, ECF No. 1; Appellant's Br. 21, 31, ECF No. 13-13.

Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made and should winnow out weaker arguments and focus on a few key issues, choosing only the strongest arguments to present on appeal based on his judgment as to their merits and the tactical approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983). Relying on the presumptive correctness of the state courts' implied factual findings, and assuming the state courts applied the *Strickland* standard to Petitioner's claims, the state courts' rejection of the claims is not objectively unreasonable under the doubly-deferential standard. It cannot be considered outside the wide breadth of reasonable appellate representation to present a potentially meritorious argument that an appellate

court may conclude was not preserved for review. Nor has Petitioner established sufficient facts or legal authority to meet his burden of establishing that former article 42.12, § 3b(a)(2) of the Texas Code of Criminal Procedure is unconstitutional as a matter of due process or equal protection. A state prisoner serving a life sentence is not eligible for release under the Texas mandatory-supervision statute and has no constitutionally protected interest in loss of good time credits. *See Ex parte Franks,* 71 S.W.3d 327, 327-28 (Tex. Crim. App. 2001). *See also Arnold v. Cockrell,* 306 F.3d 277, 278-79 (5th Cir. 2002) (deferring to *Franks* and finding no protected interest in loss of good time credits). Further, the statute does not violate the tenants of equal protection because it applies to all persons convicted of an offense as to which an affirmative deadly weapon is made. *See Mendez v. Kyle,* 59 F.3d 1242, 1995 WL 413127, at *2 (5th Cir. 1995). Petitioner fails to raise any meritorious claims upon which he would have prevailed on appeal. Prejudice does not result from appellate counsel's failure to assert meritless claims or arguments. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994).

**C. Trial Court Error**

Under his third ground, Petitioner claims that the trial court erred and abused its discretion by allowing the forensic nurse examiner, Tiffanie Dusang, to testify as an expert on choking and strangulation and by entering a deadly-weapon finding, notwithstanding the jury's affirmative finding. Pet. 7-7A3, ECF No. 1. As to the first claim, Petitioner did not object to Dusang's testimony or qualifications at trial. Although not expressly stated by the state courts, as noted under section IV of this opinion, the Texas contemporaneous-objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review" of a claim. *Fisher,* 169 F.3d at 300. Furthermore, it is well-settled under Texas jurisprudence that the writ of habeas corpus should not

be used to litigate matters which should have been raised on direct appeal. *Ex parte Goodman,* 816 S.W.2d 383, 385 (Tex. Crim. App. 1991). As with the contemporaneous-objection rule, the federal courts recognize Texas's procedural default rule concerning the requirements that record claims must be raised on direct appeal as an independent and adequate state procedural bar precluding federal habeas review. *Aguilar v. Dretke,* 428 F .3d 526, 535 (5th Cir. 2005). Petitioner's failure to lodge a contemporaneous objection to the prosecutor's argument and/or raise the claim on direct appeal constitutes a procedural default precluding this Court's review. *Coleman,* 501 U.S. at 731-32. Absent a showing of cause and prejudice or a fundamental miscarriage of justice, such showing not having been demonstrated by Petitioner, the claim is barred. In the alternative, Dusang's testimony regarding her qualifications and education establishes that she was qualified to offer expert testimony concerning choking and, more specifically, strangulation and had done so in many cases. Reporter R., vol. 4, 187-90.

Petitioner also claims that the trial court erred by entering a deadly-weapon finding in the judgment, notwithstanding the jury's affirmative finding to the special issue in the jury charge. Pet. 7A1-A3, ECF No. 1. It is a settled point of Texas law that in a jury trial, the trial court may enter an affirmative finding of a deadly weapon in at least three situations: when the jury has (1) found guilt as alleged in the indictment and the deadly weapon has been specifically pleaded as such using "deadly weapon" nomenclature in the indictment; (2) found guilt as alleged in the indictment but, though not specifically pleaded as a deadly weapon, the weapon pleaded is *per se* a deadly weapon; or (3) affirmatively answered a special issue on deadly-weapon use. *Polk v. State,* 693 S.W.2d 391, 396 (Tex. Crim. App. 1985). Petitioner's case clearly fits within the parameters of the third category. Furthermore, under former article 42.12, § 3(g)(a)(2), once a deadly-weapon finding was made by

the jury, the trial judge was statutorily obligated to enter the deadly-weapon finding in the judgment. *See Ex parte Poe,* 751 S.W.2d 873, 876 (Tex. Crim. App. 1988). Therefore, the trial court did not err in entering a deadly-weapon finding in the judgment.

### D. Prosecutorial Misconduct

Lastly, Petitioner claims that the prosecutor engaged in misconduct by making improper statements that were outside the record and had no relation to the evidence in his case. Pet. 7B1, ECF No. 1; Pet'r's Supp. 3, ECF No. 18; Reporter's R. 235, ECF No. 13-9. Petitioner raised this claim on direct appeal in conjunction with his claim that the prosecutor improperly commented on Petitioner's failure to testify. SHR, Appellant's Br.,10-11, ECF No. 9-13. Similarly, Petitioner did not object to the argument at trial. Although not expressly stated by the appellate court, Petitioner's failure to lodge a contemporaneous objection to the prosecutor's argument constitutes a procedural default precluding this Court's review of the claim. Absent a showing of cause and prejudice or a fundamental miscarriage of justice, such showing not having been demonstrated by Petitioner, the claim is barred from the Court's review. In the alternative, the jury argument, set forth *in toto* under section IV, *supra,* falls under the permissible categories of an answer to opposing counsel's argument and a plea for law enforcement. *See Buxton v. Collins,* 925 F.2d 816, 825 (5th Cir. 1991). Even if the argument was improper, improper jury argument by the prosecution does not present a claim of constitutional magnitude unless such argument is so prejudicial that the petitioner's trial was rendered fundamentally unfair. Such unfairness exists only if the misconduct was persistent and pronounced or the evidence of guilt was so insubstantial that conviction would not have occurred but for the improper remarks. *See Harris v. Cockrell,* 313 F.3d 238, 245 (5th Cir. 2002). The complained-of argument was not repeated or pronounced, and, in light of the considerable evidence

17

of Petitioner's guilt, there is no reasonable probability that, absent the argument, the result of his trial would have been different.

For the reasons discussed, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. A certificate of appealability is also DENIED.

**SO ORDERED** on this 9th day of April, 2019.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**